## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JAMES STEPHEN BELLES,

             Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

CIVIL ACTION NO. 3:21-CV-02179

(MEHALCHICK, M.J.)

### MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff James Stephen Belles ("Belles")'s claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). The matter is before the undersigned United States Magistrate Judge by consent of the parties pursuant to the provisions of Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 12). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision is hereby AFFIRMED.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On January 23, 2020, Plaintiff Belles protectively filed an application for Title II benefits, claiming disability beginning March 23, 2020, due to a heart condition, lumbar radiculopathy, chronic pain syndrome, osteoporosis, diabetes, Klinefelter syndrome, depression, and anxiety. (Doc. 14-2, at 23, 29). The Social Security Administration initially denied Belles's application on April 20, 2020, and upon reconsideration on October 26, 2020,

prompting Belles's request for a hearing, which Administrative Law Judge ("ALJ") Michelle Wolfe held telephonically on February 25, 2021. (Doc. 14-2, at 23). At the hearing, Belles amended the alleged onset date to March 28, 2019. (Doc. 14-2, at 23). In a written opinion dated May 3, 2021, the ALJ determined that Belles was not disabled and therefore not entitled to the benefits sought. (Doc. 14-2, at 23-38). On October 26, 2021, the Appeals Council denied Belles's request for review. (Doc. 14-2, at 2).

On December 30, 2021, Belles filed the instant action. (Doc. 1). The Commissioner responded on April 14 and 15, 2022, providing the requisite transcripts from the disability proceedings. (Doc. 13; Doc. 14). The parties then filed their respective briefs, with Belles alleging two errors warrant reversal or remand. (Doc. 15; Doc. 16; Doc. 17)

II.   **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now-familiar five-step analysis." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

### B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r of Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately

- 3 -

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Belles is disabled, but whether the Commissioner's determination that Belles is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   THE ALJ'S DECISION

In her decision, the ALJ determined that Belles "has not been under a disability, as defined in the Social Security Act, from March 28, 2019, through the date of this decision." (Doc. 14-2, at 37). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At the onset, the ALJ determined that Belles met the insured status requirements of the Social Security Act through December 31, 2021. (Doc. 14-2, at 25).

- 4 -

A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572(a)-(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Belles "has not engaged in [SGA] since March 28, 2019, the alleged onset date." (Doc. 14-2, at 25). Thus, the ALJ's analysis proceeded to step two.

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "degenerative disc disease with facet syndrome of the lumbar spine, degenerative disc disease of the thoracic spine, sacroiliac joint dysfunction, osteoporosis, chronic pain syndrome, obesity, aortic insufficiency, a bicuspid aortic valve, ascending aorta

dilation, cardiomyopathy, generalized anxiety disorder[,] and major depressive disorder." (Doc. 14-2, at 25-26). The ALJ also noted non-severe impairments of: "hypertension, hyperlipidemia, diabetes mellitus, anemia, hypothyroidism, irritable bowel syndrome, GERD, hypogonadism, Klinefelter syndrome, sinusitis, thrombocytopenia, fatty liver disease, B12 deficiency, headache, vitamin D deficiency, lymphadenopathy, dysphagia, folliculitis/pruritic disease, acne, tinea cruris, dermatitis, hernia[,] and mild cervical degenerative disc disease." (Doc. 14-2, at 26).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines the claimant's impairment or impairments meet a listing, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 404.1520(d). The ALJ determined that none of Belles's impairments, considered individually or in combination, met or equaled a Listing. (Doc. 14-2, at 26). Specifically, the ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)); 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina); 1.18 (abnormality of a major joint(s) in any extremity); 4.00 (cardiovascular system); 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (Doc. 14-2, at 26-27).

D.  RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Belles alleged that his impairments caused the following symptoms: severe pain in the back and legs that limits his ability to sit, stand, walk, reach, bend, kneel, and lift; suicidal thoughts; panic attacks when in new or different places, including panic and anxiety attacks in public and two to three panic attacks per week lasting five to ten minutes each with symptoms of rapid heartbeat and sweating; thoughts of people making fun of him; argumentative behaviors, including arguments with bosses and coworkers; yelling at people when driving; problems with memory, concentration, understanding, following instructions, and getting along with others, including the need to write things down to remember them; bad moods which last all day; failing to shower or dress and lying down during the day; needing to stop after walking for eight to ten minutes; needing to change position after ten minutes of sitting or standing; and problems using stairs. (Doc. 14-2, at 30). The ALJ found that while Belles's medically determinable impairments could reasonably be expected to cause

the alleged symptoms, Belles's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 14-2, at 30). The ALJ then went on to detail Belles's medical records and treatment history. (Doc. 14-2, at 30-36). Considering all evidence in the record, the ALJ determined that Belles had the RFC "to perform light work as defined in 20 CFR 404.1567(c)," subject to the following non-exertional limitations:

> [Belles] can occasionally balance, stoop, crouch, crawl, kneel and climb, but he can never climb ladders, ropes or scaffolds. [Belles] is limited to frequent exposure to vibrations and hazards, including moving machinery and unprotected heights. [Belles] should be provided with a sit/stand option throughout the workday with each interval being up to a maximum of 45 minutes each time, but he will not be off task when transferring positions. [Belles] is limited to simple, routine tasks, no complex tasks, in a low stress work environment defined as occasional decision-making and occasional changes in work setting. [Belles] can have occasional interaction with supervisors and coworkers, but no team type setting work, and no interaction [with the] public.

(Doc. 14-2, at 29).

E.   STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn the requirements of the work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d

Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that through the date last insured, Belles was unable to perform his past relevant work. (Doc. 14-2, at 36). The ALJ noted past relevant work as a grocery store stock clerk, DOT # 299.367-014, which is semiskilled work classified at the heavy exertional level but was actually performed at the medium exertional level; the exertional requirements exceeded Belles's RFC. (Doc. 14-2, at 36). Thus, the ALJ proceeded to step five of the sequential analysis.

   F.   STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, the ALJ made vocational determinations that Belles was 47 years old on the alleged onset date, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. § 404.1563. (Doc. 14-2, at 36). The ALJ also noted that Belles "has at least a high school education" as considered in 20 C.F.R. § 404.1564. (Doc. 14-2, at 36). The ALJ determined that upon consideration of these factors, Belles's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Doc. 14-2, at 36). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Belles could have performed the requirements of occupations, such as a garment sorter, assembler of small products, and ticketer, which are occupations with open positions ranging from 56,000 to 251,000 nationally. (Doc. 14-2, at 37). As a result of this analysis, the

ALJ determined that Belles was not disabled and denied Belles's application for benefits. (Doc. 14-2, at 38).

IV.   **DISCUSSION**

Belles advances two main arguments on appeal. First, Belles asserts that the ALJ failed to properly evaluate the mental health opinions evidence from physician assistant Kacy Tomko, Pa-C ("PA Tomko"), and psychologist Fran Angelella, Psy.D. ("Dr. Angelella"). (Doc. 15, at 8). Second, Belles argues the ALJ's RFC does not account for his moderate limitation in concentration, persistence, and pace. (Doc. 15, at 12). In opposition, the Commissioner states the ALJ reviewed the longitudinal record and her conclusion was reasonable under the facts and law. (Doc. 16, at 1).

A.   THE ALJ DID NOT ERR IN HER EVALUATION OF OPINION EVIDENCE.

Belles avers that the ALJ did not adequately evaluate the medical opinions of Dr. Angelella and PA Tomko. (Doc. 15, at 8). Specifically, Belles contends the AJ erroneously relied on a single page citation in the 1,878-page record to find these medical opinions unpersuasive. (Doc. 15, at 10). In opposition, the Commissioner argues that the ALJ properly evaluated the medical opinions in accordance with the applicable Social Security Regulations. (Doc. 16, at 10-11).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five

to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence supports the ALJ's RFC determination as it pertains to the opinions of Dr. Angelella and PA Tomko.

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of

the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ must evaluate the supportability of the medical opinion by considering how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). The ALJ must evaluate the consistency of the medical opinion by considering how "consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). While the ALJ must evaluate these factors, the ALJ is not required to "explicitly reference" them using any "magic words." *Shirley v. Comm'r of Soc. Sec.*, No.

3:21-CV-00455, 2022 WL 3083702, at *6 (M.D. Pa. Aug. 3, 2022) (quoting *Hess*, 931 F.3d at 200; *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022)).

Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3).

To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

Here, the ALJ provided the following analysis of the medical opinions from PA Tomko:

> [The] marked to extreme level of limitation . . . . is not well explained or supported by the objective medical evidence, which has shown that despite mood deficits, there have been consistent objective medi[c]al findings of

- 13 -

cooperative attitude, appropriate mood, clear speech, fair eye contact, coherent and logical thought process, intact associative thinking, intact language processing intact memory, normal attention span and concentration, intact and realistic judgment and intact and appropriate insight (Exhibits B18F, Pg. 28). In addition, these opinions are not consistent with the conservative level of treatment in the record which has consisted of outpatient therapy and medication management with no need for emergency interventions or partial or inpatient care.

(Doc. 14-2, at 34).

With regard to supportability, meaning how well PA Tomko supported her opinions with medical evidence and supporting explanations, 20 C.F.R. § 404.1520c(c)(1), the ALJ stated that "not well explained or supported by the objective medical evidence." (Doc. 14-2, at 34). This analysis, despite its brevity, is accurate. In her June 2020 opinion, PA Tomko provided only the following explanation: "Patient reporting depression, isolation, irritability, mood swings, mood liability and difficulty interacting with others." (Doc. 14-7, at 710-12). In her January 2021 opinion, PA Tomko provided only this explanation: "Patient has depression, anxiety, irritability and mood liability which would interfere with any normal work stressors and duties . . . . Patient has mood liability and irritability . . . . Patient has anxiety and changes to environment would exacerbate this." (Doc. 14-14, at 25-28). Under the circumstances, the Court finds the ALJ's analysis of the supportability of PA Tomko's opinions is sufficient.

With regard to consistency, the ALJ stated that the opinions are not "supported by the objective medical evidence," and, as support for the ALJ's finding, listed the mood/affect, language/thought, and cognition findings from the medical records submitted by Matthew Berger, M.D. ("Dr. Berger"). The ALJ referred to these as "consistent objective medi[c]al findings." (Doc. 14-2, at 34). Throughout the medical records from Dr. Berger in Exhibit

B18F, the only deviations from the objective findings discussed by the ALJ include displays

of anxiety and an anxious, depressed, or subdued mood (Doc. 14-7, at 727, 31, 35, 44, 48, 52,

56, 60, 64, 68, 72). The ALJ also rejected the opinion of PA Tomko because the "opinions

are not consistent with the conservative level of treatment in the record which has consisted

of outpatient therapy and medication management with no need for emergency interventions

or partial or inpatient care." (Doc. 14-2, at 34). Although it seems a close call, the ALJ has

sufficiently analyzed the persuasiveness of the opinion of PA Tomko.

     The Court also finds that the ALJ sufficiently analyzed the persuasiveness of the

opinion of Dr. Angelella. Here, the ALJ provided the following analysis of the medical

opinions from Dr. Angelella:

> The undersigned also found the opinion [from Fran Angelella, Psy.D. dated
> June 29, 2020] that provided a moderate level of limitation persuasive, but not
> the marked limitations, as a greater level of limitation in simply not supported
> by the objective evidence of record, as discussed in detail above and
> incorporated herein. Further, while a marked level of limitation in social
> interaction was not persuasive, the undersigned did consider the claimant's
> mood deficits and reported problems getting along with others, in placing
> restrictions to team type work and no interaction with the public. However, the
> record does not support even greater limitations. Similarly, Dr. Angelella
> completed a medical opinion on January 28, 2021 that indicated similar
> limitations except for placing moderate to marked limits on understanding and
> remembering detailed instructions due to declined cognitive function related to
> mood regression (Exhibit B27F). This opinion was also partially persuasive for
> the same reasons as discussed above. In terms of the limitations to
> understanding and remembering detailed instructions, these were not
> persuasive because there is no evidence to support decreased cognitive function
> related to mood. The treatment records show that even when the claimant has
> a subdued mood, he had a coherent and logical thought process, intact
> associative thinking, intact language processing intact memory, normal
> attention span and concentration and intact and realistic judgment (Exhibits
> B18F, Pg. 28). However, the limitation to unskilled work in the residual
> functional capacity [] nevertheless would address a certain level of impairment
> in this area. As such, the opinions of Dr. Angelella were partially persuasive.

(Doc. 14-2, at 35).

The Court notes that in her June 2020 opinion, Dr. Angelella provided only the following explanation: "mood [illegible] and changes in [illegible] to stressors are not predictable and often limit function." (Doc. 14-7, at 714-16). In her January 2021 opinion, Dr. Angelella stated only: "When mood state regresses and anxiety level increases[,] cognitive functioning may temporarily decline." (Doc. 14-14, at 32-34). Although briefly, the ALJ adequately discussed the persuasiveness of Dr. Angelella's opinion.

Therefore, we find that the ALJ adequately evaluated the medical opinions of Dr. Angelella and PA Tomko.

B. THE ALJ DID NOT FAIL TO ACCOUNT FOR BELLES'S MODERATE MENTAL LIMITATIONS.

Belles also argues that the ALJ formulated an RFC which did not account for his moderate limitation in concentration, persistence, and pace. (Doc. 15, at 8; Doc. 17, at 6). Specifically, Belles argues "[t]he ALJ's limitation to simple and routine tasks is not a 'detailed assessment,' nor does it adequately account for [Belles]'s moderate limitation in concentration, persistence, and pace." (Doc. 15, at 15). In response, the Commissioner contends that the ALJ considered Belles's alleged mental impairments at every step of the sequential evaluation and accounted for mental health limitations in the RFC. (Doc. 16, at 18-19).

In his brief, Belles relies upon the Third Circuit in *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), to support his argument that "a limitation to simple, routine tasks 'does not take into account deficiencies in pace.'" (Doc. 15, at 12). The Third Circuit has clarified that *Ramirez* does not stand for the proposition that ALJ's are forbidden from using "simple tasks" limitations when a claimant has moderate difficulties in concentration, persistence, or

pace, but, the ALJ must explain *why* the claimant can perform such tasks. *Hess*, 931 F.3d at 211. "[S]o long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Hess*, 931 F.3d at 211. Without such an explanation, a "simple tasks" limitation "does not warrant a conclusion about whether a claimant's difficulties in 'concentration, persistence, or pace' are so serious that he cannot satisfy the functional requirements of 'simple tasks' " since the limitation alone "does not account for the *extent* of a claimant's difficulties." *Hess*, 931 F.3d at 213 (emphasis in original). Despite the plaintiff in *Ramirez* "often" having difficulties, and the plaintiff in *Hess* having "moderate" difficulties, the Third Circuit explained that regardless of the rating scale, a simple tasks limitation that has a relationship to a claimant's difficulty in concentration, persistence, or pace *must* be followed by a valid explanation. *Hess*, 931 F.3d at 212-13 ("[An explanation] must be given whether difficulties in that area are said to arise 'often' or are called 'moderate' in severity."). A valid explanation is necessary because of the close relationship between a "simple tasks" limitation and concentration, persistence, or pace:

> [S]uch limitations directly encompass and anticipate a minimal level of ability in that functional area. "[U]nderstanding, carrying out, and remembering simple instructions" includes "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)[;] [t]he ability to perform activities within a schedule . . . [;] [t]he ability to sustain an ordinary routine without special supervision[;] . . . [and] [t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace and without an unreasonable number and length of rest periods."

> *Hess*, 931 F.3d at 212-13 (citations omitted) (alterations in original).

Moreover, the ALJ need not use particular language or "explicitly include" a "functional limitation finding as to 'concentration, persistence or pace' in the RFC assessment." *Hess*, 931 F.3d at 213. Although functional limitations and the RFC are different, the functional limitations are "plainly relevant to an ALJ's statement of the claimant's limitation at the later steps because they involve the claimant's actual impairments." *Hess*, 931 F.3d at 209 (providing that functional limitation categories are "used to rate the severity of mental impairments" when mental health is at issue, while the "RFC is a determination of 'the most [a claimant] can still do despite [his] limitations' 'based on all the relevant evidence in [the] case record.'" (alterations in original) (citation omitted)). While "the functional limitation findings do not dictate the terms of the ALJ's statement of the claimant's limitation[,]" "those findings are relevant to that statement of the limitation." *Hess*, 931 F.3d at 210. A valid explanation is necessary to elucidate why the claimant's difficulties are not so significant to prevent him or her from performing simple tasks. Hess, 931 F.3d at 212. The Third Circuit has adopted a "fact-specific 'valid explanation' approach" and the outcome of each case depends on the particular facts. *Hess*, 931 F.3d at 213

The ALJ in *Hess* "highlighted, among other things, the following: mental status examinations and reports that revealed that Hess could function effectively; opinion evidence showing that Hess could do simple work; and Hess's activities of daily living, which demonstrated that he is capable of engaging in a diverse array of 'simple tasks.'" *Hess*, 931 F.3d at 214. And the court in *Hess* concluded that the ALJ offered a "valid explanation for her 'simple tasks' limitation":

> [T]he ALJ explained at length and with sound reasoning why Hess's "moderate" difficulties in "concentration, persistence, or pace" were not so significant that Hess was incapable of performing "simple tasks." For example,

- 18 -

> coupled with her finding that Hess had "moderate difficulties" in "concentration, persistence or pace," the ALJ explained that Hess's "self-reported activities of daily living, such as doing laundry, taking care of his personal needs, shopping, working, and paying bill (when he has money), . . . are consistent with an individual who is able to perform simple, routine tasks." In the same discussion, the ALJ also observed that "progress notes from treating and examining sources generally indicate no serious problems in this area of functioning, reporting that [Hess] could perform simple calculations, was fully oriented, and has intact remote/recent memory."

*Hess*, 931 F.3d at 213-14 (citations omitted).

Here, with regards to concentrating, persisting or maintaining pace, the ALJ found that Belles has a moderate limitation. (Doc. 14-2, at 28). Specifically, the ALJ explained:

> The claimant alleges problems with concentration and following instructions. However, the claimant is able to count change, operate a motor vehicle, watch television and news shows and read the newspaper (Exhibit B3E and Hearing Testimony). In addition, on mental status examination, the claimant is found to have a normal attention span and concentration, a coherent and logical thought process, intact associative thinking, intact language processing and has no signs of hallucinations or delusions. The claimant was able to have fair eye contact and clear speech (Exhibits B18F, Pg. 28). As such, in analyzing and balancing this evidence, the undersigned finds it would not support more than a moderate level of limitation in this area.

(Doc. 14-2, at 28).

In making the RFC determination, the ALJ reiterated Belles's reports of difficulties with memory, concentration, understanding, following instructions and getting along with others. (Doc. 14-2, at 30). The ALJ found that the objective medical evidence of record does not support the extent of Belles's allegations, noting that the records document him as having a normal attention span and concentration, intact and realistic judgment, and intact and appropriate judgment. (Doc. 14-2, at 32). In addition, as discussed *supra*, the ALJ considered the medical opinions of PA Tomko and found that her finding of a marked to extreme and moderate limitations in concentration, persistence, and pace was not supported or consistent

with the objective medical evidence and conservative level of treatment. (Doc. 14-2, at 34). In addition, the ALJ addressed the opinion of Dr. Angelella that Belles had moderate to extreme limitations in concentration, persistence, and pace, finding that a moderate limitation is persuasive, but not a marked limitation, "as a greater level of limitation is simply not supported by the objective evidence of record." (Doc. 14-2, at 34-35). Throughout the opinion, the ALJ repeatedly noted that on mental status examination, Belles is "described as having a normal attention span and concentration, intact and realistic judgment[,] and intact and appropriate insight." (Doc. 14-2, at 32-35). Therefore, in the RFC, the ALJ limited Belles to "simple, routine tasks, no complex tasks, in a low stress work environment defined as occasional decision-making and occasional changes in work setting,"  with "occasional interaction with supervisors and coworkers, but no team type setting work, and no interaction [with the] public." (Doc. 14-2, at 29).

During the administrative hearing, the ALJ asked the vocational expert a number of hypotheticals, and incorporated mental and cognitive limitations in those hypotheticals, specifically asking about a hypothetical individual with Belles's same age, education, and work experience, who "can do simple, routine tasks, but no complex tasks in a low-stress environment defined as occasional decision-making and occasional changes in the work setting, and occasional interaction with supervisors and coworkers and no interaction with the public." (Doc. 14-2, at 64). In response, the vocational expert testified that there are jobs that exist in significant numbers in the national economy that such a hypothetical person can perform. (Doc. 14-2, at 64-65).

While Belles relies heavily on the Third Circuit's decision in *Ramirez*, that case involved a plaintiff who had an extensive mental health treatment record demonstrating

deficiencies in concentration, persistence, or pace, whereas here, Belles only suffers moderate limitations. 372 F.3d at 554. "[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Hess*, 931 F.3d at 211 (explaining that this conclusion "flows directly from our decision in *Ramirez*"). Based on cases reviewed by the Third Circuit, this Court is satisfied that the ALJ did indeed offer a valid explanation for only limiting Belles to simple, routine tasks as a result of the ALJ's finding that Belles had a moderate limitation in concentration, persistence, or pace. The record did not credibly establish specific, additional limitations for the reasons discussed throughout the ALJ's decision. *See Ramirez*, 372 F.3d at 554 (explaining that where other limitations have not been established by the record, no more limitations need be included in the hypothetical question); *Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (a hypothetical that asked the vocational expert "to assume that the individual could understand, remember, and carry out simple instructions, would have limited contact with the public and coworkers, and would not have a quota to fulfill" accurately conveyed the plaintiff's limitations who had "moderate difficulties with concentration, persistence, or pace."); *Reid v. Astrue*, No. 08-2300, 2009 WL 2710243, at *7 (E.D. Pa. Aug. 28, 2009) ("[B]ecause the record does not suggest that Plaintiff's moderate difficulties in 'concentration, persistence, or pace' would limit Plaintiff's ability to perform 'simple, repetitive' tasks, there was valid justification for the ALJ's omission of more specific references in the hypothetical."). Furthermore, the Court finds that there is substantial evidence in the record that establishes Belles's moderate limitations in the areas of mental functioning do not preclude her from performing unskilled work. *See McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008) (holding that a hypothetical question limiting plaintiff to

"simple, routine tasks" adequately captured the ALJ's finding that the plaintiff had "moderate limitations with his ability to maintain concentration, persistence and pace").

According, the Court finds based on this record, *Ramirez* does not require remand or otherwise undermine that RFC finding and that the ALJ's RFC determination is supported by substantial evidence.

V.   CONCLUSION

Based on the foregoing, the Commissioner's decision is **AFFIRMED**, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

**Dated: October 11, 2022**                          s/ *Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                     **Chief United States Magistrate Judge**